## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELIZABETH MARTIN,
an individual,                                                 Case No.:

      Plaintiff,

v.

TD BANK, N.A.,
a national association,
TARGET CORPORATION d/b/a
TARGET CARD SERVICES,
a foreign for-profit corporation, and
NORTHLAND GROUP, INC.,
a foreign for-profit corporation,

      Defendants.
_____/

## VERIFIED COMPLAINT

**COMES NOW,** Plaintiff, ELIZABETH MARTIN (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, TD BANK, N.A. (hereinafter, "TDB"), TARGET CORPORATION d/b/a TARGET CARD SERVICES (hereinafter, "TCS"), and NORTHLAND GROUP, INC. (hereinafter, "NGI") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq*. (hereinafter, the "FDCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.     Venue in this District is proper because Defendants transact business in this District, and the conduct complained of occurred in this District.

3.     At all material times herein, the conduct of Defendants, complained of below, occurs in Pinellas County, Florida.

4.     At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

5.     At all material times herein, TDB is a national association engaged in business in Florida with its principal place of business located at 1701 Route 70 East Cherry Hill, New Jersey 08034.

6.     At all material times herein, TCS is a foreign for-profit corporation existing under the laws of the state of Minnesota that, itself and through its subsidiaries, regularly extends consumer credit card services to residents in Pinellas County, Florida.

7.     At all material times herein, NGI is a foreign for-profit corporation with its principal place of business located at 7831 Glenroy Road, Suite 250, Edina, MN 55439 that, itself and through its subsidiaries, regularly collects debts owed, or asserted to be owed to another, from consumers in Pinellas County, Florida.

## GENERAL ALLEGATIONS

8.     At all material times herein, Defendants TDB and TCS are each a "creditor" as defined by Florida Statutes, Section 559.55(5).

9.      At all material times herein, Defendant NGI is a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

10.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

11.     At all material times herein, Defendants attempt to collect a debt, specifically a balance allegedly due on a Target consumer credit card referenced by account number ending in -0269, account ID number ending in -6783, and NGI reference number ending in -9662 (hereinafter, the "Debt").

12.     At all material times herein, NGI used interstate mail while engaging in a business the principal purpose of which is the collection of debts allegedly due another.  NGI is also an entity who regularly collects or attempts to directly or indirectly collect debts owed or due, or asserted to be owed or due, another.

13.     At all material times herein, the Debt is a consumer debt, incurred primarily for personal, household, or family use.

14.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Florida Statutes, Sections 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

15.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

16.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

3

17.    All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

**FACTUAL ALLEGATIONS**

18.    Defendants TDB's and TCS' made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number ending in -4125 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

19.    Plaintiff is the owner, regular user, and possessor of a Cellular Telephone with the assigned number ending in -4125.

20.    On or about October 24, 2014, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter "Undersigned Counsel") for representation with respect to her debts generally, including the Debt.

21.    At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

22.    Further, if TDB or TCS contend they possessed such consent, such consent was revoked the moment TDB and TCS received the First Fax of Representation, as defined herein, which advised TDB and TCS of Undersigned Counsel's representation of Plaintiff with respect to the Debt.

23.    Additionally, if TDB or TCS contend the below-referenced phone calls were placed for "informational purposes only," they nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's cellular phone using an ATDS, a PTDS, or an APV.

24.    On or about October 27, 2014, Undersigned Counsel sent TDB a facsimile transmission advising TDB of Undersigned Counsel's representation of Plaintiff with respect to

the Debt, advising TDB of Undersigned Counsel's contact information, and demanding that all direct communication with Plaintiff cease and should be directed to Undersigned Counsel's office (herein, "First Fax of Representation"). Please see attached a true and correct copy of the First Fax of Representation and fax confirmation sheet labeled as Exhibit "A."

25.     On or before November 23, 2014, TDB retained TCS to assist with collecting and/or servicing the Debt.

26.     When TDB retained TCS' services, TDB advised TCS of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information because TDB had a duty to do so.

27.     On or about November 23, 2014, at approximately 1:10 p.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

28.     On or about November 26, 2014, at approximately 10:52 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

29.     On or about December 3, 2014, at approximately 9:53 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

30.     On or about December 6, 2014, at approximately 10:22 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

31.     On or about December 9, 2014, at approximately 12:34 p.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

32.     On or about December 12, 2014, at approximately 10:21 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

33.     On or about December 13, 2014, at approximately 10:55 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

34.     On or about December 16, 2014, at approximately 10:00 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS,

a PTDS, or an APV in an attempt to collect the Debt.

35.     On or about December 19, 2014, at approximately 11:53 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

36.     On or about December 20, 2014, at approximately 11:18 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

37.     On or about December 22, 2014, at approximately 4:07 p.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

38.     On or about December 27, 2014, at approximately 10:23 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

39.     On or about December 30, 2014, at approximately 3:20 p.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent,

knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

40.     On or about December 30, 2014, Undersigned Counsel sent TDB *another* facsimile transmission *again* advising TDB of Undersigned Counsel's representation of Plaintiff with respect to the Debt, *again* advising TDB of Undersigned Counsel's contact information, and *again* demanding that all direct communication with Plaintiff cease and should be directed to Undersigned Counsel's office (herein, "Second Fax of Representation").  Please see attached a true and correct copy of the Second Fax of Representation and fax confirmation sheet labeled as Exhibit "B."

41.     When TDB received the Second Fax of Representation, TDB again advised TCS of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information because TDB had a duty to do so.

42.     Between December 30, 2014 and January 7, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made *at least* two (2) calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

43.     On or about January 2, 2015, at approximately 11:37 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

44.     On or about January 5, 2015, at approximately 11:04 a.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's

contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

45.    On or about January 5, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a collection letter in an attempt to collect the Debt.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "C."

46.    On or about January 9, 2015, at approximately 1:53 p.m. EST, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly made a call to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

47.    During the immediately-aforementioned call, Plaintiff spoke with TCS' employee or representative "Tegiah" and *again* advised TCS of Undersigned Counsel's representation of Plaintiff with respect to the Debt, *again* advised TCS of Undersigned Counsel's contact information, and *again* demanded that all direct communication to Plaintiff must cease and should be directed to Undersigned Counsel's office.

48.    On or about January 9, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a letter advising Plaintiff TCS and TDB "recently learned that [Plaintiff] may be filing for a bankruptcy" and closed Plaintiff's account giving rise to the Debt.  Please see attached a true and correct copy of said letter labeled as Exhibit "D."

49.     On or about January 14, 2015, Undersigned Counsel sent TDB *another* facsimile transmission *again* advising TDB of Undersigned Counsel's representation of Plaintiff with respect to the Debt, *again* advising TDB of Undersigned Counsel's contact information, and *again* demanding that all direct communication with Plaintiff cease and should be directed to Undersigned Counsel's office (hereinafter, "Third Fax of Representation").  Please see attached a true and correct copy of the Third Fax of Representation and fax confirmation sheet labeled as Exhibit "E."

50.     When TDB received the Third Fax of Representation, TDB again advised TCS of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information because TDB had a duty to do so.

51.     On or about January 22, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "F."

52.     On or about February 22, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "G."

53.     On or about March 22, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a billing statement in an attempt to collect the Debt.  Please see attached a true and correct copy of

said billing statement labeled as Exhibit "H."

54.     On or about April 22, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a billing statement in an attempt to collect the Debt. Please see attached a true and correct copy of said billing statement labeled as Exhibit "I."

55.     On or before December 7, 2015, TDB turned the Debt over to NGI for collection.

56.     When TDB turned the Debt over to NGI for collection, TDB advised NGI of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and advised NGI of Undersigned Counsel's contact information because it had a duty to do so.

57.     On or about December 7, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff and Undersigned Counsel's contact information, NGI, on TDB's behalf—and with TDB's consent, knowledge, and approval—directly sent Plaintiff a collection letter an attempt to collect the Debt. Please see attached a true and correct copy of said collection letter labeled as Exhibit "J."

58.     On or about December 14, 2015, Undersigned Counsel sent NGI and TDB a facsimile transmission advising NGI—and *again* advising TDB—of Undersigned Counsel's representation of Plaintiff with respect to the Debt, advising NGI of Undersigned Counsel's contact information, and demanding that all direct communication with Plaintiff cease and should be directed to Undersigned Counsel's office (hereinafter, "Fourth Fax of Representation"). Please see attached a true and correct copy of the Fourth Fax of Representation and fax confirmation sheet labeled as Exhibit "K."

59.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their

services.

60.     Due to both professional and personal commitments, Plaintiff was not able to record the specifics (as done above) on each and every call Defendants made to Plaintiff. Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and TCPA. Further, Defendants are in the best position to determine and ascertain the number and methodology of debt collection calls made to Plaintiff.

61.     As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion, and belief that the hiring of an attorney for representation with respect to the Debt was wholly ineffective and that Plaintiff would simply have to endure Defendant's frequent, repeated direct debt collection attempts.

62.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

63.     United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against NGI.

64.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call placed using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

65.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call placed using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

66.     As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Debt. Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

67.     TDB and TCS are subject to, and each violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

68.     Specifically, TDB received actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt when TDB received the Faxes of Representation.

69.     Further, upon receipt of each Fax of Representation, TDB advised TCS of Undersigned Counsel's representation of Plaintiff with respect to the Debt because it had a duty to do so.[1]

70.     Despite possessing the above-referenced knowledge of Undersigned Counsel's legal representation of Plaintiff Montgomery with respect to the Debt and possessing Undersigned Counsel's contact information, TCS, on TDB's behalf—and with TDB's consent, knowledge, and

---

[1] *See Kelliher v. Target National Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) (finding that an original creditor has an affirmative duty to notify its third-party debt collectors/agents that a consumer is represented by an attorney when the creditor turns the debt over for collection); *Micare v. Foster & Garbus*, 132 F.Supp.2d 77 (N.D. NY 2001) (noting that a "debt collector wishing to defeat the purposes of the act could establish a practice of not seeking out information regarding the debtor's representation by counsel. Whenever a creditor discovered that a debtor was represented by counsel, it could transfer the file to a debt collector with such a practice to allow them to contact the debtors directly without fear of liability…"); *see also Powers v. Professional Credit Servs., Inc.*, 107 F.Supp.2d 166, 168 (noting that permitting creditors and debt collectors to engage in such limited disclosure "would utterly eviscerate the protections afforded by the FDCPA").

approval—directly called Plaintiff's Cellular Phone in an attempt to collect the Debt *at least* sixteen (16) times using an ATDS, a PTDS, or an APV and directly sent Plaintiff *at least* six (6) billing statements and *at least* one (1) collection letter in an attempt to collect the Debt.

71.    TDB's and TCS's willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

72.    As a direct and proximate result of TDB's and TCS' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

73.    Defendants are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving actual notice that Plaintiff was represented by legal counsel with respect to the Debt.

74.    Specifically, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information from the First, Second and Third Faxes of Representation (hereinafter collectively, "Faxes of Representation") [2] and from Plaintiff herself on *at least* one (1) occasion, TCS, on TDB's behalf—

---

[2] Upon receipt of each Fax of Representation, TDB advised TCS of Undersigned Counsel's representation of Plaintiff with respect to the Debt because it had a duty to do so. *See Kelliher v. Target National Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) (finding that an original creditor has an affirmative duty to notify its third-party debt collectors/agents that a consumer is represented by an attorney when the creditor turns the debt over for collection); *Micare v. Foster & Garbus*, 132 F.Supp.2d 77 (N.D. NY 2001) (noting that a "debt collector wishing to defeat the purposes of the act could establish a practice of not seeking out information regarding the debtor's representation by counsel. Whenever a creditor discovered that a debtor was represented by counsel, it could transfer the file to a debt collector with such a practice to allow them to contact the debtors directly without fear of liability…"); *see also Powers v. Professional Credit Servs., Inc.*, 107 F.Supp.2d 166, 168 (noting that permitting creditors and debt collectors to engage in such limited disclosure "would utterly eviscerate the protections afforded by the FDCPA").

and with TDB's consent, knowledge, and approval—directly sent Plaintiff *at least* six (6) billing statements and *at least* one (1) collection letter and directly placed *at least* sixteen (16) calls to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

75.    In addition, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information from TDB when TDB turned the Debt over to NGI for collection,[3] NGI directly sent Plaintiff *at least* one (1) collection letter in an attempt to collect the Debt.

76.    As such, Defendants violated Florida Statutes, Section 559.72(18).

77.    As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)**

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

78.    NGI is subject to, and violated the provisions of, 15 United States Code, Section 1692c(a)(2) by communicating directly with Plaintiff despite possessing knowledge that Plaintiff was represented by Undersigned Counsel with respect to the Debt and possessing knowledge of Undersigned Counsel's contact information.

79.    Specifically, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information from TDB when TDB turned the Debt over to NGI for collection,[4] NGI directly sent Plaintiff *at least* one (1) collection letter in an attempt to collect the Debt.

---

[3] *Id.*
[4] *Id.*

80.     As a direct and proximate result of NGI's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT FOUR:
## TELEPHONE CONSUMER PROTECTION ACT-
## <u>VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)</u>

Plaintiff re-alleges paragraphs one (1) through sixty-six (66) as if fully restated herein and further states as follows:

81.     TDB and TCS are each subject to, and each violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

82.     TCS, on TDB's behalf—and with TDB's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiff's cellular phone *at least* sixteen (16) times in its attempt to collect the Debt.

83.     At no time did TDB or TCS possess Plaintiff's prior express consent to call Plaintiff on her Cellular Telephone.

84.     Further, if TDB or TCS contend they possessed such consent, such consent was revoked the moment TDB received the First Fax of Representation—and TDB advised TCS of the same—which advised TDB of Undersigned Counsel's representation of Plaintiff with respect to the Debt.

85.     Additionally, if TDB or TCS contend the referenced phone calls were made for "informational purposes only," they nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's cellular phone using an ATDS, PTDS, or APV.

86.     The phone calls placed by TCS, on TDB's behalf—and with TDB's consent,

knowledge, and approval—complained of herein are the result of repeated willful and knowing violations of the TCPA.

87.    As a direct and proximate result of TDB's and TCS' conduct, Plaintiff suffered:

a.    The periodic loss of her cellular phone service;

b.    Lost material costs associated with the use of peak time cellular phone minutes allotted under her cellular phone service contract; and

c.    Stress, anxiety, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls made in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against each Defendant declaring that each Defendant violated the FCCPA;

b.    Judgment against each Defendant for maximum statutory damages for violations of the FCCPA;

c.    Judgment against NGI for maximum statutory damages for violations of the FDCPA;

d.    Judgment against TDB and TCS declaring that TDB and TCS violated the TCPA;

e.    Judgment against TBD and TCS for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

f.    Judgment against TBD and TCS for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which TBD and

TCS acted knowingly and/or willfully;

g.   Actual damages in an amount to be determined at trial;

h.   An award of attorneys' fees and costs; and

i.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Aaron M. Swift*
**[X] Aaron M. Swift, Esq., FBN 093088**
**☐ Gregory H. Lercher, Esq., FBN 0106991**
**☐ Sara J. Weiss, Esq., FBN 0115637**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sweiss@leavenlaw.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA )

)

COUNTY OF Pinellas )

Plaintiff Elizabeth Martin, having first been duly sworn and upon oath, deposes and says as follows:

1.  I am a Plaintiff in this civil proceeding.

2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6.  Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____

Elizabeth Martin

Subscribed and sworn to before me

this 11 day of July, 2016.

_____

Notary Public

My Commission Expires:                    Proof of I.D.: _Personally Known_



ASHLEY R PATRICK
MY COMMISSION #FF181112
EXPIRES December 13, 2018
(407) 398-0153    FloridaNotaryService.com

19